**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ERIC L. BLOOM, | ) | |
| | ) | Chapter 7 |
| Debtor | ) | Case No. 13-34871-EPK |
| | ) | |

**MOTION OF ROBERT D. GORDON, RECEIVER FOR LEGISI MARKETING, INC., GREGORY N. MCKNIGHT, AND LEGISI HOLDINGS, LLC, FOR ORDER (I) GRANTING RELIEF FROM THE AUTOMATIC STAY TO LIQUIDATE CLAIMS IN PENDING FINRA ARBITRATION AND (II) STAYING ADVERSARY PROCEEDING**

> **ANY INTERESTED PARTY WHO FAILS TO FILE AND SERVE A WRITTEN RESPONSE TO THIS MOTION WITHIN 14 DAYS AFTER THE DATE OF SERVICE STATED IN THIS MOTION SHALL, PURSUANT TO LOCAL RULE 4001-1(C), BE DEEMED TO HAVE CONSENTED TO THE ENTRY OF AN ORDER GRANTING THE RELIEF REQUESTED IN THE MOTION.**

Robert D. Gordon ("Gordon"), in his capacity as Receiver for Legisi Marketing, Inc., Gregory N. McKnight, and Legisi Holdings, LLC, through his attorneys Becker & Poliakoff, PA and Clark Hill PLC, files this motion (the "Motion") pursuant to sections 105(a) and 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 4001-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida (the "Court") for entry of an order: (i) granting relief from the automatic stay to permit Gordon to liquidate his claims against Eric L. Bloom ("Bloom"), the debtor in the above-captioned case, in a pending arbitration under the Financial Industry Regulatory Authority ("FINRA"); and (ii) staying Adversary Proceeding No. 14-01125-EPK pending the conclusion of said arbitration (as

well as pending the obtaining of US. District Court confirmation of any award entered in said arbitration, as discussed below).  In support of the Motion, Gordon respectfully states as follows:

## Background

1. Gordon was appointed the Receiver for Gregory McKnight, Legisi Marketing, Inc. and Legisi Holdings, LLC, among others, (collectively, the "Receivership Estate"), on May 5, 2008 by the United States District Court for the Eastern District of Michigan in the case of *United States Securities and Exchange Commission v. McKnight, et al.,* Case No. 08-11887.

2. On March 23, 2009, Gordon commenced FINRA Dispute Resolution Arbitration No. 09-01690 (the "FINRA Arbitration") against Bloom and Allen Goddard McGowan Pak & Partners LLC, Alan Goddard ("Goddard"), and Michael Lichtenstein ("Lichtenstein") (collectively, the "Non-Debtor Defendants").  Bloom was the sole owner of Allen Goddard McGowan Pack & Partners LLC, its Principal, Chief Compliance Officer, and CEO.  Goddard and Lichtenstein were registered representatives who worked for the broker dealer and were subject to Bloom's supervision and compliance reviews.

3. On July 21, 2011, Gordon filed his *First Amended Statement of Claim* in the FINRA Arbitration.  A copy of the *First Amended Statement of Claim* is attached hereto as Exhibit 1.  In the *First Amended Statement of Claim*, Gordon alleges that Bloom and the Non-Debtor Defendants were liable to the Receivership Estate for violations of section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 10b-5 promulgated thereunder, section 20(a) of the Exchange Act, the Michigan Uniform Securities Act, the Florida Securities Transactions Act, and common law fraud in connection with the sales of securities, among other violations.

4. Extensive discovery was conducted in the FINRA Arbitration, and numerous motions were adjudicated in the FINRA Arbitration. Bloom retained the same attorneys who are representing the Non-Debtor Defendants. Bloom participated in six days of trial video depositions of two witnesses, Gregory McKnight ("McKnight") and Paul Harary.

5. On October 16, 2013, five days before the FINRA Arbitration hearing was to commence in Southfield, Michigan, Bloom filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code in this Court. The bankruptcy filing stayed the FINRA Arbitration against Bloom.

6. On October 21, 2013, the FINRA Arbitration hearing commenced and proceeded against the Non-Debtor Defendants. The FINRA Arbitration panel (the "Arbitration Panel") heard opening statements and motions, and then watched the four days of video trial testimony of McKnight taken while Bloom participated in the arbitration. Bloom has not been prejudiced by the arbitration hearing proofs since during the video deposition he was represented by counsel who cross-examined the witness for two days.

7. The FINRA Arbitration hearing is scheduled to continue on June 2, 2014 for two weeks.

8. On January 21, 2014, Gordon filed a *Complaint to Determine Dischargeability of Debt and for Denial of Debtor's Discharge* (the "Complaint") in this bankruptcy case, thereby commencing Adversary Proceeding No. 14-01125-EPK. A copy of the Complaint is attached hereto as Exhibit 2. In the Complaint, Gordon alleges that the debt arising out of Bloom's violations of section 10(b) of the Exchange Act, Rule 10b-5 promulgated thereunder, section 20(a) of the Exchange Act, the Michigan Uniform Securities Act, the Florida Securities Transactions Act, and common law fraud (*i.e.*, the same violations alleged in the *First Amended*

*Statement of Claim* in the FINRA Arbitration) is excepted from discharge under section 523(a)(2),(4),(6), and (19) of the Bankruptcy Code.

## Relief Requested

9. Pursuant to this Motion, Gordon requests entry of an order (i) granting relief from the automatic stay arising under section 362(a) of the Bankruptcy Code by modifying the stay to permit Gordon to liquidate his claims against Bloom in the FINRA Arbitration and to permit Gordon to obtain confirmation of any arbitration award entered in the FINRA Arbitration by a court of competent jurisdiction; and (ii) staying Adversary Proceeding No. 14-01125-EPK pending the conclusion of the FINRA Arbitration and U.S. District Court confirmation of any award entered in said arbitration.

## Basis for Relief

10. Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that on request of a party in interest, and after notice and a hearing, the Court shall grant relief from the automatic stay, such as by terminating, annulling, modifying, or conditioning such stay "for cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause" as used in section 362(d)(1). Therefore, under section 362(d)(1), "courts must determine whether discretionary relief is appropriate on a case by case basis." *Laguna Associates L.P. v. Aetna Casualty & Surety Co. (In re Laguna Associates L.P.)*, 30 F. 3d 734, 737 (6th Cir. 1994); *see also In re Mack*, 347 B.R. 911, 915 (Bankr. M.D. Fla. 2006) ("Whether cause exists to grant stay relief must be determined on a case by case basis based upon the totality of the circumstances in each particular case.") (citations omitted). The totality of the circumstances favor modifying the stay to permit Gordon to liquidate his claims in the FINRA Arbitration.

A. **The Totality of the Circumstances Favor Modifying the Stay to Permit Gordon to Liquidate His Claims in the FINRA Arbitration**

11. Courts have identified a number of factors to consider when making a determination of whether or not cause exists to terminate or modify the automatic stay to permit a creditor to continue pending litigation against the debtor in another forum. *See, e.g., In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992); *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990); *In re Johnson*, 115 B.R. 634 (Bankr. D. Minn. 1989); *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984). In the *Johnson* case, the bankruptcy court identified the following seven factors:

(1) Whether insurance coverage with a duty of defense is available to the debtor or the estate, or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate;

(2) Whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate and to avoid a multiplicity of suits and proceedings involving the same subject matter;

(3) Whether the state-court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial were deferred;

(4) Whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter;

(5) Whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such non-debtor parties without the debtor's presence in the lawsuit;

(6) Whether the creditor has a probability of success on the merits; and

(7) Whether the interests of the debtor and the estate would be better served by the resolution of threshold bankruptcy-law issues in the Bankruptcy Court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.

*In re Johnson*, 115 B.R. 634 (Bankr. D. Minn. 1989).

12. In the *Robbins* case, the Fourth Circuit Court of Appeals identified the following three factors: (1) whether the issues in the pending litigation involve only state law, so that the

expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court. *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992).

13. The relevant *Johnson* factors and all of the *Robbins* factors strongly favor modification of the stay in this case to permit the FINRA Arbitration to proceed against Bloom.

14. *Judicial Economy*. The interests of judicial economy strongly favor the continuation of the FINRA Arbitration against Bloom. More than 57 months have passed since the FINRA Arbitration was commenced. There were 161 pleadings filed in the arbitration not including subpoenas issued by the Arbitration Panel. An extensive judicial record has been developed in the FINRA Arbitration, extensive discovery has been conducted and numerous motions have been decided. It would be a waste of judicial resources to adjudicate state and federal securities law claims against Bloom in this Court while simultaneously adjudicating such claims against the Non-Debtor Defendants in the FINRA Arbitration, when the Arbitration Panel is so clearly qualified, well-situated, and prepared to determine federal and state securities claims. Conversely, if the matter were litigated in this Court, it would require a great deal of time and attention of the Court to familiarize itself with the matters that have been submitted to the Arbitration Panel, and it would require significant duplication of efforts by the litigants. Investment of resources by Gordon and the Receivership Estate and the Non-Debtor Defendants would be wasted if the trial for Bloom is deferred.

15. Furthermore, Bloom himself insisted that Gordon's claims be arbitrated by FINRA. Bloom and the Non-Debtor Defendants moved to compel FINRA arbitration of all the

securities and partnership claims of Gordon against them in *Gordon v. Royal Palm Real Estate Investment Fund, I, LLC et al.,* ("Royal Palm") Case No. 2:09-cv-11770, pending in the United States District Court for the Eastern District of Michigan before Judge Julian Abeel Cook. See Royal Palm at Docket Nos. 8, 13, 27 and 33. Bloom contended that all of Gordon's claims had to be determined in a FINRA arbitration based upon (1) a binding arbitration clause contained in the New Account Agreement signed by McKnight on behalf of Legisi Marketing and (2) the Uniform Submission Agreement, which was signed by Gordon as part of the filing of his Statement of Claim with FINRA. Having insisted that the claims be arbitrated by FINRA, Bloom is estopped and cannot now assert that the stay should not be lifted or that the claims must be litigated in this Court.[1]

16. *Trial-Readiness*. The FINRA Arbitration is trial-ready and in process. The hearing has commenced and is scheduled to continue on June 2, 2014 for two weeks. Accordingly, this factor weighs heavily in favor of modifying the stay.

17. *Securities Law Issues*. The FINRA Arbitration involves principally state and federal securities laws issues, issues FINRA is uniquely qualified to address. FINRA is the Financial Industry Regulatory Authority authorized by Congress. FINRA administers the largest forum specifically designed to resolve security-related disputes between investors, securities firms and individual brokers. The Arbitration Panel is abundantly qualified to rule on these

---

[1] Judge Cook granted Bloom's motion to compel arbitration based solely upon the signing of the Uniform Submission Agreement by Gordon. Judge Cook determined that there was no arbitration agreement in the New Account Agreement and found that Bloom, Goddard, and Lichtenstein fraudulently represented to the District Court that the New Account Agreement contained a broad arbitration clause when, in fact, the arbitration clause was taken from a separate clearing broker agreement. Judge Cook concluded that Bloom, Goddard, and Lichtenstein "actively and repeatedly misrepresented the nature and origin of the three pages" of what they claimed was part of the New Account Agreement. Judge Cook sanctioned Bloom, Goddard, and Lichtenstein by awarding Gordon $39,815.40 in attorney fees. See Royal Palm at Docket Nos. 57 and 65.

issues. The chairperson of the Arbitration Panel is James Karpen. Mr. Karpen was the former head of the State of Michigan Securities Commission and is an administrative law judge with the Michigan Department of Consumer and Industry Services. The securities industry representative on the Arbitration Panel is Suzanne Slick who was a compliance officer with Morgan Stanley until she retired in 2007. Accordingly, this factor weighs in favor of modifying the stay.

18. *Full Relief May Not Be Accorded to Gordon without Bloom's Presence*. Because Bloom was the Principal and Chief Compliance Officer at the broker dealer in question, he is an integral part of Gordon's claim that the lack of supervision and appropriate compliance review significantly contributed to the federal and state securities laws violations. The Non-Debtor Defendants have already contended to the Arbitration Panel that proofs related to supervision and compliance should be excluded if Bloom is not a participant in the FINRA Arbitration. Accordingly, full relief may not be accorded to Gordon without Bloom's presence in the FINRA Arbitration. Therefore, this factor weighs in favor of modifying the stay.

19. *Probability of Success by Gordon on the Merits*. There is a strong probability that Gordon will succeed on the merits. Gordon has compiled an extensive document history showing that Bloom participated in violations of state and federal securities laws. On the regulatory side, FINRA and the United States Securities and Exchange Commission have conducted independent investigations and made findings that Bloom violated federal securities laws and regulations. FINRA's findings resulted in Bloom being permanently barred from the securities industry. Accordingly, this factor weighs in favor of modifying the stay.

20. *Protection of the Debtor's Estate*. Since Gordon is merely seeking to proceed with the FINRA Arbitration to adjudicate and liquidate his claims against Bloom, and not to enforce any judgment against Bloom without leave of this Court, the interests of Bloom's estate

will be protected if the stay is modified as requested herein. Furthermore, Bloom's interests have been protected in the FINRA Arbitration. From the commencement of the FINRA Arbitration in March of 2009, Bloom was represented by the same three law firms as the Non-Debtor Defendants. His interests have been completely aligned with their interests. They have uniformly argued the same factual and legal defenses from the onset of the FINRA Arbitration. Bloom's interests have been protected at no cost to him by the current law firm for the Non-Debtor Defendants, which appeared on May 31, 2011 and which continues to vigorously represent the aligned interests of the Non-Debtor Defendants.

**B.** **Relief from the Stay Is Particularly Warranted in this Case Due to Gordon's Pending Non-Dischargeability Claim under Section 523(a)(19) of the Bankruptcy Code**

21.   Relief from the automatic stay to adjudicate the alleged violations of state and federal securities laws in the FINRA Arbitration is particularly critical in light of Gordon's pending non-dischargeability claim under section 532(a)(19) of the Bankruptcy Code.

22.   Section 523(a)(19) of the Bankruptcy Code provides that a discharge under section 727 does not discharge a debt that:

(A) is for—

   (i)   the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

   (ii)   common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from—

   (i)   any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding; or

   (ii)   any settlement agreement entered into by the debtor; or

        (iii)   any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19).

23.    Some courts have held that liability under section 523(a)(19)(B) of the Bankruptcy Code must be determined by a tribunal outside of the bankruptcy forum. *See, e.g., Faris v. Jafari (In re Jafari)*, 401 B.R. 494, 498 (Bankr. D. Col. 2009) (concluding that, absent a settlement agreement or consensual determination of liability, section 523(a)(19)(B) evidences a conscious choice by Congress to have the liability determination occur outside of the bankruptcy forum); *Terek v. Bundy (In re Bundy)*, 468 B.R. 916, 922 (Bankr. E.D. Wash. 2012) (concluding that determination that a violation of state or federal securities laws has occurred must be made by a tribunal other than the bankruptcy court).

24.    To the extent that liability under section 523(a)(19)(B) must be made in a tribunal other than the bankruptcy court, absent a settlement agreement entered into by Bloom acknowledging liability, Gordon will only be able to satisfy the requirements of section 523(a)(19)(B) if he is granted relief from the stay to adjudicate his claims in a forum other than the bankruptcy court. It would be highly prejudicial to Gordon and the Receivership Estate to deny stay relief under such circumstances.

25.    Furthermore, some courts have held that FINRA is not a Federal or State judicial or administrative body and, therefore, absent confirmation of a FINRA arbitration award by a court of competent jurisdiction, the award alone cannot provide a basis for the dischargeability of debt under section 523(a)(19). *See, e.g., Hartford Fin. Holdings, Inc. v. Singer*, 2010 U.S. Dist. LEXIS 45045 (S.D.N.Y. May 4, 2010) ("The Bankruptcy Court then concluded that 'FINRA is not a Federal or State judicial or administrative body,' and therefore, 'absent confirmation of the

Arbitration Award by a court of competent jurisdiction, the award alone cannot provide a basis for the dischargeability of debt under § 523(a)(19).'"). Accordingly, Gordon seeks relief from the stay to permit him to obtain confirmation of any award entered in the FINRA Arbitration by a court of competent jurisdiction (presumably, the U.S. District Court presiding over the Receivership proceedings).

26. In addition, in determining whether relief should be granted, courts "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992). Here, little to no hardship will befall the bankruptcy estate if the stay is modified as requested herein since Gordon is merely seeking to proceed with the FINRA Arbitration to liquidate his claims against Bloom, and not to enforce any judgment against Bloom without leave of this Court. Conversely, Gordon and the Receivership Estate will suffer *considerable* hardship if the stay is not modified because Gordon will be required to duplicate efforts and expense (and suffer attendant delay) in putting the same issues before this Court, while pursuing his claims against the Non-Debtor Defendants separately in the FINRA Arbitration.

27. For the foregoing reasons, the stay should be modified to permit the FINRA Arbitration to proceed against Bloom. If the stay is modified to permit the FINRA Arbitration to proceed against Bloom, Adversary Proceeding No. 14-01125-EPK should be stayed pending the conclusion of the FINRA Arbitration and confirmation of any award entered in said arbitration. *See Holland v. Zimmerman (In re Zimmerman)*, 341 B.R. 77, 81 (Bankr. N.D. Ga. 2006) (modifying the automatic stay to permit plaintiffs to proceed with National Association of

Securities Dealers[2] arbitration and staying adversary proceeding to determine dischargeability pending the conclusion of arbitration of their claims).

## **Notice**

28.     This Motion has been served by transmission of notices of electronic filing generated by CM/ECF to all registered users in Bloom's bankruptcy case.

---

[2] The National Association of Securities Dealers is the predecessor to FINRA.

**Conclusion**

WHEREFORE, Gordon respectfully requests that the Court grant the Motion, enter an order substantially in the form attached hereto as Exhibit 3, and grant such other and further relief to Gordon as the Court deems just and appropriate in the circumstances.

    Respectfully submitted,

    BECKER & POLIAKOFF, P.A.
    1 East Broward Blvd., Suite 1800
    Ft. Lauderdale, FL  33301
    Telephone:  (954) 987-7550
    Facsimile:  (954) 985-4176
    DDesouza@bplegal.com

    By: : /s/ DANIEL DESOUZA, ESQ.
    Daniel DeSouza, Esq.
    Florida Bar No. 19291

    Attorneys for Robert D. Gordon


    CLARK HILL PLC

    By: /s/ JOEL D. APPLEBAUM
    Charles E. Murphy Michigan Bar No. P28909
    Joel D. Applebaum Michigan Bar No. P36774
    151 S. Old Woodward Avenue, Suite 200
    Birmingham, Michigan 48009
    Telephone (248) 988-5879
    Facsimile 248-988-2331
    cmurphy@clarkhill.com
    japplebaum@clarkhill.com

Date: February 3, 2014    Attorneys for Robert D. Gordon